758 F.2d 653
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
DONALD MCCUNE, PETITIONER-APPELLANT,
v.
E.P. PERINI, RESPONDENT-APPELLEE.
 NO. 84-3242, 84-3243
 United States Court of Appeals, Sixth Circuit.
 2/11/85
 
 ON APPEAL from the United States District Court for the Northern District of Ohio
 Before: EDWARDS and KENNEDY, Circuit Judges; and PHILLIPS, Senior Circuit Judge.
 Per Curiam.
 
 
 1
 Petitioner Donald McCune was convicted of aggravated murder under Ohio Rev. Code Sec. 2903.01 after pleading not guilty and not guilty by reason of insanity. After an evidentiary hearing before Judge George E. Martin of the Portage County Court of Common Pleas, McCune was determined to be competent to stand trial. Petitioner waived his right to trial by jury and the case was tried before Judge Martin. McCune was found guilty by the court and was sentenced to life imprisonment on February 21, 1980. After a timely appeal, the Court of Appeals of Ohio, Eleventh Judicial District, affirmed the conviction. The Supreme Court of Ohio denied discretionary review.
 
 
 2
 On March 30, 1982, petitioner filed a petition for habeas corpus in federal court pursuant to 28 U.S.C. Sec. 2254. The United States magistrate issued a report recommending dismissal and the district court adopted the magistrate's recommendations. The district court denied petitioner's application for a certificate of probable cause to appeal, but this Court granted this application. After a thorough review of this case, we affirm the judgment of the district court.
 
 
 3
 * Petitioner married the victim, Josephine McCune, in August of 1975. The wife filed for divorce in September of 1979. Petitioner sought reconciliation that autumn, and was depressed and upset at that time. He reported hallucinations that he saw the devil's feet in the back seat of his car and heard the devil's voice. He had the delusion that his wife and step son, James Carter, were possessed, and notified the Welfare Department in September of 1979 that he feared James Carter would kill him. Later, he also began to fear his brothers-in-law, the Fugates.
 
 
 4
 The victim's mother testified that petitioner telephoned the victim on October 27, 1979 and told her she would never get her divorce because he would kill her first. He also threatened to kill their daughter, Dawn. Also, in October of 1979, there was an incident where petitioner apparently attempted to run over his wife and brother-in-law, William Fugate. Fugate assaulted petitioner after this incident.
 
 
 5
 On December 1, 1979, petitioner borrowed some money from his ex-wife, Norma. He used the money to purchase a handgun that same day. On December 3, 1979, petitioner went to Josephine McCune's trailer with the gun. Also present at the trailer were Mrs. McCune's eleven year old son, Dale Carter, and nine year old daughter, Dawn McCune. Dale Carter testified that his stepfather 'busted open the door and had a gun, and he said, 'I got you now." McCune told his wife 'we're going for a ride.' There was a struggle over her purse and McCune warned her that he would 'blow [her] brains out' if she did not surrender the purse.
 
 
 6
 McCune forced his wife outside and drove away with her in her car. Dale Carter ran to his grandmother's home while Dawn McCune ran to her neighbor's house. James O'Connor, the neighbor, testified over objection that Dawn told him that her father had come to the trailer with a gun and taken her mother outside. O'Connor testified that Dawn was agitated, had been crying, and was shaking when she made these statements. The trial court held the testimony admissible under the excited utterance exception to the hearsay rule, Rule 803(2) of the Ohio and Federal Rules of Evidence.
 
 
 7
 Two hours after leaving the trailer, McCune arrived at the home of Mrs. Joyce King. Mrs. King testified that petitioner told her that he had short his wife and himself, and that he asked for God's forgiveness. Petitioner collapsed on her floor with a gunshot wound to his chest. Mrs. King smelled the odor of alcohol on McCune's breath. Mrs. King found the victim, Josephine McCune, in a car outside slumped against the passenger door. There was a hand gun lying next to her on the seat. She was pronounced dead on arrival at the hospital from two gunshot wounds to her head and two to her chest and trunk area. Petitioner was treated for a single, self-inflicted wound beneath his collar bone. An alcohol test was performed and petitioner scored well below the level of intoxication.
 
 
 8
 After entry of the pleas, petitioner's attorney filed a motion requesting a competency evaluation. Petitioner was interviewed by Mr. Joseph Adkins, a psychiatric social worker, to determine his competency. Petitioner made several incriminating statements to the effect that he had shot himself and that he was not really ashamed of his actions. These statements were made outside the presence of counsel. The report containing these statements was reviewed by Judge Martin. Petitioner had a second competency evaluation from Dr. Martin Gunter, during which petitioner's attorney was present as a passive observer. After a hearing and consideration of the evaluations, the court determined that petitioner was competent. The court denied petitioner's motion to exclude inculpatory statements from the psychiatric evaluations to be produced in connection with his insanity defense.
 
 
 9
 Petitioner underwent two sanity evaluations on February 5, 1980. On was conducted by Dr. Gunter and another by Dr. Horace Page. A third evaluation was made by Dr. Elliot Midgal. Dr. Gunter testified at trial that he did not believe McCune could have formulated a design or intention to commit the crime due to his mental abnormality. Dr. Page testified that although McCune was sane when he committed the crime, he was an impulsive person and had reported hallucinations. Dr. Midgal testified that in his opinion petitioner had committed the homicide impulsively without prior deliberation.
 
 II
 
 10
 Petitioner challenges his conviction on four grounds. He argues that his right to a fair trial was violated because the presiding judge had also conducted the competency hearing and had read psychiatric reports containing inculpatory statements. He contends that admission into evidence of his inculpatory statements violated his fifth amendment right not to incriminate himself and his sixth amendment right to counsel. He also maintains that his right to confront his accusers was violated where a witness was allowed to testify to statements made by petitioner's daughter, Dawn McCune. Finally, he urges that his conviction for aggravated murder was not based on proof beyond a reasonable doubt on the element of prior deliberation. We find that all of these contentions are without merit. We address the contentions in reverse order.
 
 
 11
 Petitioner's challenge to the sufficiency of the evidence is based on Jackson v. Virginia, 443 U.S. 307 (1979), where the Court held that postconviction relief is available where no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See id. at 319. Petitioner contends that the State did not establish the element of 'prior design and calculation.' Compare Ohio Rev. Code Sec. 2903.01 with Sec. 2903.02.
 
 
 12
 The circumstances of the murder and petitioner's conduct clearly evidence prior design and calculation. Petitioner had threatened his wife, purchased a gun two days before the murder, brought a gun to the trailer, made statements of intent and threats upon arriving at the trailer, and acknowledged his actions in statements to Mrs. King after the murder. These facts clearly establish the requisite intent. It was not necessary for the State to present expert testimony to establish prior deliberation. A trier of fact may reject the expert testimony as Judge Martin did in this case. Moore v. Duckworth, 443 U.S. 713 (1979) (per curiam).
 
 
 13
 We also conclude that there was no reversible error in admitting the hearsay testimony of James O'Connor describing statements made by Dawn McCune. Rule 803(2) of the Ohio Rules of Evidence, which is identical to the federal rule, allows admission of excited utterances even where the witness is available. Provided there is a startling occurrence sufficient to cause nervous excitement and a contemporaneous statement related to the startling event. See State v. Duncan, 53 Ohio St. 2d 215, 373 N.E. 2d 1234 (1978).
 
 
 14
 Petitioner contends that regardless of whether Dawn McCune's statement satisfied this exception to the hearsay rule, his right to confront his accusers was infringed by admission of this statement. Dawn McCune was too young to testify under Ohio law. See Ohio Rev. Code Sec. 2307.17. Petitioner contends that Ohio v. Roberts, 448 U.S. 56 (1980) requires a witness to be unavailable before such a statement may be introduced at trial. We need not determine whether Dawn McCune was 'unavailable' or whether the evidence was admissible under Ohio v. Roberts, however, because we are convicted that any error in admitting the evidence was harmless beyond a reasonable doubt. Dawn McCune's testimony was merely cumulative; the more damaging testimony came from Dale Carter. Petitioner himself also made damaging statements to Mrs. King.
 
 
 15
 Petitioner's allegations of fifth and sixth amendment violations are also without merit. Relying on Estelle v. Smith, 451 U.S. 454 (1981), petitioner urges that his disclosures in pretrial psychiatric evaluations were inadmissible because he was not awarned of his right to remain silent and, during the Adkins evaluation, was not afforded counsel. Estelle v. Smith is inapposite to this case. There, the defendant was ordered by the court to undergo a competency evaluation and made incriminating statements regarding lack of remorse that were admitted against him, over objection, in the penalty phase of his trial. The Court held, in these 'distinct circumstances,' that procedural safeguards were required to safeguard fifth amendment rights, Id. at 466, and that the defendant's right to counsel was violated when he made the uncounseled statements, id. at 469. Here, the competency evaluation was requested by petitioner's counsel and the reports were introduced by petitioner's counsel, although counsel objected to portions of Adkins' testimony at trial.
 
 
 16
 Under Ohio law, at the time of trial, statements made during a competency evaluation are not admissible in a criminal trial on the issue of guilt. Ohio Rev. Code Sec. 2945.38(J). Subsequently, Ohio prohibited the use of statements made during insanity evaluations as well. Ohio Rev. Code Sec. 2945.39(D). Although the trial judge refused, after the competency hearing, to order examiners of McCune's sanity to exclude from their reports any of his statements or admissions, the examinations after this ruling did not contain prejudicial statements. The prejudicial statements were contained in the report of Mr. Adkins, who was called as a witness by petitioner. This information came before the court because it was introduced by petitioner. Petitioner requested admission of Mr. Adkins' competency report at trial, and objected only when Mr. Adkins testified to petitioner's statement that he had shot his wife. Clearly, these circumstances are quite different from those in Estelle v. Smith. See United States v. Byers, 740 F.2d 1104 (D.C. Cir. 1984) (en banc).
 
 
 17
 Finally, we conclude that petitioner's right to a fair trial was not violated. Petitioner contends that he was deprived of due process because the presiding judge had heard all the evidence at the competency hearing. A judge in a bench trial is presumed to consider only admissible evidence; introduction of incompetent evidence does not require reversal absent an affirmative showing of prejudice. United States v. McCarthy, 470 F.2d 222, 224 (6th Cir. 1972). Here the evidence challenged by petitioner was admitted into evidence at petitioner's request. There is no prejudice to petitioner because, as discussed supra, there was adequate evidence of intent based on petitioner's conduct and other circumstances.
 
 
 18
 It should be noted that petitioner did not request Judge Martin to recuse himself. Moreover, Judge Martin's review of information regarding petitioner's mental state in the competency hearing is no more prejudicial than pretrial review of evidence in pretrial motions to suppress evidence.
 
 
 19
 The district court's denial of habeas corpus relief is AFFIRMED.